1  GORDON SILVER
   Michael N. Feder
2  Nevada Bar No. 7332
   Email: mfeder@gordonsilver.com
3  Puneet K. Garg
   Nevada Bar No. 9811
4  Email: pgarg@gordonsilver.com
   3960 Howard Hughes Pkwy., 9th Floor
5  Las Vegas, Nevada 89169
   Tel: (702) 796-5555
6  Fax: (702) 369-2666
   *Attorneys for Defendants Resort Solutions, Inc.;*
7  *Royal Elite Vacations, LLC; and Royal Elite Exchanges, LLC*

8
               **UNITED STATES DISTRICT COURT**
9
                    **DISTRICT OF NEVADA**
10
   HOLIDAY SYSTEMS INTERNATIONAL OF
11 NEVADA, d/b/a HOLIDAY SYSTEMS
   INTERNATIONAL, a Nevada corporation        CASE NO. 2:10-cv-00471-LRH-GWF
12
                         Plaintiff,
13                                            **RESORT SOLUTIONS, INC., ROYAL**
   vs.                                        **ELITE VACATIONS, LLC AND ROYAL**
14                                            **ELITE EXCHANGES, LLC'S MOTION**
   VIVARELLI, SCHWARZ AND ASSOCIATES,         **TO DISMISS PURSUANT TO FRCP 4(m),**
15 S.A. de C.V., a Mexican corporation; RESORT **12(b)(4), 12(b)(5), 41(b) and 12(b)(2)**
   SOLUTIONS INC., a Virginia corporation;
16 ROYAL ELITE VACATIONS, LLC, a Virginia
   limited liability company; ROYAL ELITE
17 EXCHANGES, LLC, a Virginia limited liability
   company; and AARON SCHWARZ, an
18 individual,

19                       Defendants.

20

21        COME NOW Defendants Resort Solutions, Inc. ("RSI"), Royal Elite Vacations, LLC

22 ("REV"), and Royal Elite Exchanges, LLC ("REE") (collectively referred to as "Moving

23 Defendants"), by and through their counsel of record, the law firm of Gordon Silver, respectfully

24 file this Motion to Dismiss the Complaint filed by Plaintiff Holiday Systems International of

25 Nevada d/b/a Holiday Systems International (hereinafter referred to as "HSI" or "Plaintiff")

26 under Rules 4(m), 12(b)(4) and 12(b)(5) of the Federal Rules of Civil Procedure ("FRCP") for

27 untimely and insufficient service, under FRCP 41(b) for failure to prosecute and under FRCP

28 12(b)(2) for lack of personal jurisdiction.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103489-001/1530323.doc                    1 of 19

This Motion is based upon the following Memorandum of Points and Authorities, the Declaration of Keith D. Kosco, the pleadings and papers on file herein and any oral argument that this Honorable Court may entertain.

Dated this 7th day of May, 2012.

GORDON SILVER

Michael N. Feder
Nevada Bar No. 7332
Puneet K. Garg
Nevada Bar No. 9811
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
Tel: (702) 796-5555
*Attorneys for Defendants*
*Resort Solutions, Inc.; Royal Elite Vacations,*
*LLC; and Royal Elite Exchanges, LLC*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

In the underlying action, Plaintiff is alleging the following claims against the Moving Defendants: trademark infringement; unfair competition and false designation of origin; misappropriation of confidential and proprietary assets; interference with contractual relationships; unjust enrichment; conversion; and inducement to breach contract. See generally Complaint, at Doc. No. 1 (on file).

Plaintiff instituted the underlying action in April 2010, based upon certain alleged activities in 2008. Despite obtaining a 90-day extension to serve process upon all defendants in the underlying action in August 2010, Plaintiff waited nearly 700 days after initiating the underlying action to serve process upon all defendants—in March 2012. RSI, REV and REE have been severely prejudiced by Plaintiff's unsubstantiated delay in now attempting to prosecute the underlying lawsuit—especially given that Plaintiff unjustifiably admitted to not wanting to serve process upon RSI, REV and REE until after serving VSA and Mr. Schwarz. Plaintiff's disregard for the 120-day rule under FRCP 4(m) and want of prosecution warrants dismissal under FRCP 12(b)(4) and 12(b)(5). Similarly, dismissal under FRCP 12(b)(2) is

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103489-001/1530323.doc

1   warranted here as result of the Court's lack of personal jurisdiction over RSI, REV and REE.

2   **II.    PERTINENT PROCEDURAL HISTORY**

3       *A.   Commencement of Underlying Action*

4   • Plaintiff Holiday Systems International of Nevada d/b/a Holiday Systems
    International (hereinafter referred to as "HSI" or "Plaintiff") initiated the underlying
5   action against Defendants Vivarelli, Schwarz and Associates, S.A. de C.V. ("VSA"),
    Aaron Schwarz ("Mr. Schwarz"), Resort Solutions, Inc. ("RSI"), Royal Elite
6   Vacations, LLC ("REV"), and Royal Elite Exchanges, LLC ("REE") on April 5,
    2010.[1]  See Complaint, at Doc. 1 (on file).

7   • The Court issued Summons as to RSI, REV and REE on April 6, 2010.  See
8   Summons Issued, at Doc. No. 3 (on file).

9   • Plaintiff never served RSI, REV and REE with the Complaint or the Summons issued
    on April 6, 2010.
10
    • On May 21, 2010, Plaintiff submitted a proposed summons to be issued as to VSA
11   along with a Motion for Issuance of Letters Rogatory for VSA.  See Proposed
    Summons, at Doc. No. 8 (on file); Motion for Issuance, at Doc. No. 9 (on file).
12
    • The Court issued Summons as to VSA on May 24, 2010 and Letter Rogatory for VSA
13   on June 30, 2010.  See Summons, at Doc. 10 (on file); Letters Rogatory, at Doc. 11
    (on file).  Plaintiff apparently never served VSA with the Complaint or Summons
14   issued on May 24, 2010.

15       *B.  Plaintiff's Request for an Extension of Time to Effectuate Service*

16   • On August 4, 2010, Plaintiff filed an ex parte Motion for Additional Time to Effect
    Service of Process, which this Honorable Court granted on August 6, 2010, giving
17   Plaintiff until November 4, 2010 to effectuate service on all defendants.  See Order, at
    Doc. No. 13 (on file).
18
    • Plaintiff's ex parte Motion for Additional Time was filed **121 days** after Plaintiff filed
19   its Complaint.

20   • Within the ex parte Motion for Additional Time, Plaintiff sought "at least an
    additional ninety (90) days to effectuate service of process on VSA and Defendant
21   Schwarz through appropriate Mexican legal channels, and the same additional time
    period in which to serve the Royal Elite Entities [(RSI, REV and REE)] until such
22   time as both VSA and Defendant Schwarz have been served in Mexico."  See Motion
    (p. 4), at Doc. No. 12 (on file herein).
23
    • As conclusorily asserted in the ex parte Motion for Additional Time, Plaintiff had not
24   served RSI, REV and REE because Plaintiff was "highly concerned that providing
    notice of this action to one or more of these [Royal Elite] entities [would] cause VSA
25   and/or Defendant Schwarz to evade service of process in Mexico."  See id. (at p. 3).

26   ///

27   _____

28   [1]The undersigned counsel does not represent VSA or Mr. Schwarz in the underlying
    action.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103489-001/1530323.doc

- As apparent in the Court's docket sheet, Plaintiff had not sought any issuances of summons or letters rogatory for Mr. Schwarz prior to filing its ex parte Motion for Additional Time on August 4, 2010.

- In requesting an **additional ninety (90) days** for service of process upon all defendants in the underlying action, Plaintiff failed to demonstrate any causal link or prejudice of serving RSI, REV and REE within the requisite 120 days under FRCP 4(m) and how VSA and Mr. Schwarz would allegedly evade service as a result of RSI, REV and REE being served on time.

C. *Plaintiff's Lack of Good Faith in Attempting to Effectuate Service of Process*

- On August 25, 2010, Plaintiff filed an Amended Motion for Issuance of Letters Rogatory for VSA. See Amended Motion for Issuance, at Doc. No. 14 (on file).

- On September 10, 2010, the Court issued Letters Rogatory for VSA. See Letters Rogatory, at Doc. No. 15 (on file).

- Plaintiff waited until December 30, 2010 to submit a new proposed summons to be issued as to VSA; this was **146 days** after the Court had granted Plaintiff **90 additional days** to serve all defendants in the instant action. See Proposed Summons, at Doc. No. 21 (on file).

- The Court issued Summons as to VSA on January 3, 2011. See Summons, at Doc. No. 22 (on file).

- Plaintiff waited until March 28, 2011 to submit two (2) new proposed summons to be issued as to Mr. Schwarz; this was **234 days** after the Court had granted Plaintiff **90 additional days** to serve all defendants in the underlying action. See Proposed Summons, at Doc. No. 24 (on file); Revised Proposed Summons, at Doc. No. 26 (on file).

- Pursuant to Plaintiff's repeated requests on March 28, 2011, the Court issued Summons as to Mr. Schwarz on March 28, 2011 and March 29, 2011, respectively. See Summons, at Doc. No. 25; Summons, at Doc. No. 27.

- Despite Plaintiff's suggestion of Mr. Schwarz being in Mexico in Plaintiff's ex parte Motion for Additional Time (filed on August 4, 2010), Plaintiff again did not seek any letters rogatory for Mr. Schwarz.

D. *Clerk of the Court's Notice for Application for Dismissal for Want of Prosecution*

- On February 10, 2012, which was **676 days** after Plaintiff filed its Complaint and **553 days** after the Court granted Plaintiff an additional **90 days** for service of process (on August 6, 2010), the Clerk of the Court issued a Notice under Local Rule 41-1 as to making an application to the Court for dismissal for want of prosecution. See Notice, at Doc. No. 28 (on file).

- As apparent in the Court's docket sheet, Plaintiff had not sought any issuances of summons for RSI, REV or REE at any time between the Court granting Plaintiff an additional **90 days** for service of process (on August 6, 2010) and the Clerk of the Court issuing its Local Rule 41-1 Notice on February 10, 2012—again, a gap of **553 days**.

/ / /

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103489-001/1530323.doc

**E.  Plaintiff's Insufficient "Service" upon RSI, REV and REE**

- On February 27, 2012, Plaintiff finally sought the issuances of Summons as to RSI, REV and REE—despite not seeking any leave for an additional extension of time for service pursuant to FRCP 4(m).  See Proposed Summons, at Doc Nos. 29, 30 and 31 (on file).

- The Court issued Summons as to RSI, REV and REE, pursuant to Plaintiff's deficient request, on February 28, 2012.  See Summons, at Doc. No. 32.

- Plaintiff "served" RSI, REV and REE with deficient Summons and Complaint on March 2, 2012—which was **697 days** after Plaintiff filed its Complaint and **574 days** after the Court granted Plaintiff an additional **90 days** for service of process (on August 6, 2010).  See Summons Returned Executed, at Doc. Nos. 46, 47 and 48 (on file).   Plaintiff had not sought leave of the Court in untimely "serving" RSI, REV and REE **697 days** after filing the Complaint.

- Despite issues pertaining to VSA and Mr. Schwarz  allegedly evading service since the commencement of the underlying action, Plaintiff's deficient "service" upon RSI, REV and REV occurred a mere **three (3) days** after the Court issued the Summons as to RSI, REV and REE.[2]

**F.  Plaintiff's Insufficient "Service" upon Mr. Schwarz**

- On February 28, 2012, Plaintiff sought the issuances of Summons as to Mr. Schwarz—despite not seeking any leave for an additional extension of time for service pursuant to FRCP 4(m).  See Proposed Summons, at Doc. No. 33 (on file).

- The Court issued Summons as to Mr. Schwarz, pursuant to Plaintiff's deficient request, on February 29, 2012.  See Summons, at Doc. No. 34 (on file).

- Plaintiff again did not seek any letters rogatory for Mr. Schwarz despite Plaintiff's suggestion of Mr. Schwarz being in Mexico in Plaintiff's ex parte Motion for Additional Time (filed on August 4, 2010).

- Plaintiff apparently "served" Mr. Schwarz by electric means with deficient Summons and Complaint on March 1, 2012—which was **696 days** after Plaintiff filed its Complaint and **573 days** after the Court granted Plaintiff an additional **90 days** for service of process (on August 6, 2010).  See Certificate of Service for Summons, at Doc. No. 35.  Plaintiff had not sought leave of the Court in untimely "serving" Mr. Schwarz **696 days** after filing the Complaint.

/ / /

/ / /

---

[2]On March 6, 2012, which was **701 days** after Plaintiff filed its Complaint and **578 days** after the Court granted Plaintiff an additional **90 days** for service of process (on August 6, 2010), Plaintiff had sought the issuances of amended Summons to be issued as to RSI, REV and REE.  See Proposed Summons, at Doc. Nos. 39, 40, 41.  As apparent in the Court's docket sheet, Plaintiff never attempted to serve the amended Summons, along with the Complaint, upon RSI, REV and REE.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103489-001/1530323.doc

- Despite issues pertaining to VSA and Mr. Schwarz allegedly evading service since the commencement of the underlying action, Plaintiff's deficient "service" upon Mr. Schwarz occurred immediately **one (1) day** after the Court issued the Summons as to Mr. Schwarz.[3]

### G. Plaintiff's Insufficient "Service" upon VSA

- On March 2, 2012, Plaintiff sought the issuances of Summons as to VSA—despite not seeking any leave for an additional extension of time for service pursuant to FRCP 4(m). See Proposed Summons, at Doc. No. 36 (on file).

- The Court issued Summons as to VSA, pursuant to Plaintiff's deficient request, on March 5, 2012. See Summons, at Doc. No. 38.

- Despite previous requests, Plaintiff did not seek any letters rogatory for VSA as Plaintiff had previously alleged that VSA was a Mexican entity that had evaded service of process. See, e.g., Plaintiff's ex parte Motion for Additional Time, at Doc. No. 12 (on file).

- Plaintiff apparently "served" VSA with deficient Summons and Complaint on March 6, 2012—which was **701 days** after Plaintiff filed its Complaint and **578 days** after the Court granted Plaintiff an additional **90 days** for service of process (on August 6, 2010). See Summons Returned Executed, at Doc. No. 44 (on file). Mr. Schwarz apparently accepted "service" on behalf of VSA in British Columbia, Canada. Plaintiff had not sought leave of the Court in untimely "serving" VSA **701 days** after filing the Complaint.

- Despite issues pertaining to defendants in the underlying action allegedly evading service since the commencement of the underlying action, Plaintiff's deficient "service" upon VSA occurred immediately **one (1) day** after the Court issued the Summons as to VSA.

### H. Plaintiff's Misrepresentations to the Court

- On March 12, 2012, Plaintiff filed a status report regarding service of process in response to the Local Rule 41-1 Notice of February 10, 2012. Within the status report, Plaintiff **misrepresented** to the Court that it previously "entered an Order that stayed HSI's obligation to serve RSI, REV and REE until such time as it effectuated service on Mr. Schwarz and VSA" (emphasis added). Despite this misrepresentation, Plaintiff admitted in the status report that it did not attempt "service" upon the defendants in the underlying action **until March 2012** even though asserting that "after retaining the services of a private investigator, HSI **finally located Mr. Schwarz in January 2012**." See Status Report, at Doc. No. 43 (on file).

/ / /

/ / /

---

[3]Plaintiff apparently made personal service of process upon Mr. Schwarz in British Columbia, Canada on March 6, 2012. See Summons Returned Executed, at Doc. No. 45 (on file).

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103489-001/1530323.doc

- The Court's Order of August 6, 2010 only granted Plaintiff an additional **90 days** for service of process. The Court did not grant any "stay" as to Plaintiff's requirements under FRCP 4(m) to timely serve process upon RSI, REV and REE. In any event, the Court has never granted Plaintiff *__nearly 700 days__* after filing the Complaint to serve process upon all of the defendants in the underlying action.

- As revealed in the Court's docket sheet, Plaintiff "served" deficient process upon RSI, REV and REE on March 2, 2012 before "serving" process upon VSA on March 6, 2012. Despite Plaintiff's previous suggestions, VSA did not evade this "service" after Plaintiff purportedly "served" RSI, REV and REE on March 2, 2012.

- RSI, REV and REE first became aware of Plaintiff's underlying action on March 2, 2012. Affidavit of Keith D. Kosco in support of Motion to Dismiss ("Kosco Affidavit") (attached hereto as Exhibit A), at ¶ 4.

## III.   PERTINENT JURISDICTIONAL FACTS

- RSI, a Virginia corporation formed in July 2001,[4] engages in the business of providing advertising services to customers seeking to rent or sell their timeshare interests in vacation properties. <u>See</u> Kosco Affidavit, at ¶¶ 6-7

- RSI obtains business through customers visiting various vacation resorts (located outside the State of Nevada) and by word-of-mouth referrals. RSI does not direct or engage in any marketing or telemarketing activities in the State of Nevada. Specifically, customers come into contact with RSI's offered services when those customers are visiting vacation resorts in which they have timeshare interests—none of these vacation resorts are located in the State of Nevada. If any customer expresses interest in RSI's services, a RSI representative will eventually reach out to the customer over the telephone to discuss RSI's services in detail. Upon successful negotiation of any deals on the telephone, RSI will then transmit its agreement to that customer over email. RSI does not engage in any business with any vacation resorts located in the State of Nevada. <u>See</u> Kosco Affidavit, at ¶¶ 8-12

- REV, a Virginia limited liability company formed in March 2008, engages in the business of providing customized travel program memberships to customers seeking enhancements or alternatives to vacation ownership packages such as timeshares. REV's business includes offering customers accommodations, cruises, airline ticketing and daily travel discounts.[5] <u>See</u> Kosco Affidavit, at ¶¶ 14-16.

- REV obtains business through customers visiting various vacation resorts (located outside the State of Nevada) and by word-of-mouth referrals. REV does not direct or engage in any marketing or telemarketing activities in the State of Nevada. Specifically, customers come into contact with REV's offered services when those customers are visiting vacation resorts in which they have timeshare interests—none

---

[4]It has come to the attention of Moving Defendants that an entity known as Resort Solutions, Inc. has apparently been incorporated in the State of Nevada. This Nevada entity has no affiliation or relationship with Defendant Resort Solutions, Inc.—which Plaintiff has admittedly alleged to be a Virginia corporation. <u>See</u> Kosco Affidavit, at ¶ 13.

[5]The membership interests acquired by REV were reassigned to an entity known as Grand Premier Vacations, LLC on March 14, 2011. As a result of reassignment, REV is no longer in active business and does not have any enrolled members or customers. <u>See</u> Kosco Affidavit, at ¶¶ 23-24.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103489-001/1530323.doc

of these vacation resorts are located in the State of Nevada. A management company and/or representative of the vacation resort being visited by the customer will negotiate and execute all membership agreements on behalf of REV. Upon successful negotiation, the management company and/or representative of the vacation resort being visited will forward the executed membership agreement to REV in Virginia, at which point REV will invoice enrollment fees upon the management company and/or representative of the vacation resort (while simultaneously enrolling the customer as a new member to REV). REV does not engage in any business with any vacation resorts located in the State of Nevada. See Kosco Affidavit, at ¶¶ 17-22.

• REE, a Virginia limited liability company formed in May 2009, engages in the business of providing a membership exchange service allowing customers to deposit timeshare interests in vacation properties in exchange for timeshare interests in other vacation properties. REE's business includes offering customers bonus travel options, daily travel discounts, cruise promotions and airline ticketing for enrolled members. See Kosco Affidavit, at ¶¶ 25-27.

• REE obtains business through customers visiting various vacation resorts (located outside the State of Nevada) and by word-of-mouth referrals. REE does not direct or engage in any marketing or telemarketing activities in the State of Nevada. Specifically, customers come into contact with REE's offered services when those customers are visiting vacation resorts in which they have timeshare interests—none of these vacation resorts are located in the State of Nevada. A management company and/or representative of the vacation resort being visited by the customer will negotiate and execute all membership agreements on behalf of REE. Upon successful negotiation, the management company and/or representative of the vacation resort being visited will forward the executed membership agreement to REE in Virginia, at which point REE will invoice enrollment fees upon the management company and/or representative of the vacation resort (while simultaneously enrolling the customer as a new member to REE). REE does not engage in any business with any vacation resorts located in the State of Nevada. See Kosco Affidavit, at ¶¶ 28-33.

• RSI currently has approximately 25,000 customers. Of these approximately 25,000 members, only 28 customers have been Nevada residents since RSI's formation in July 2001. RSI never reached out to these customers in Nevada; these customers became RSI customers while they were visiting vacation resorts located outside the State of Nevada. See Kosco Affidavit, at ¶ 34.

• REV currently has no enrolled customers. See supra. n.5.

• REE currently has approximately 5,000 customers. Of these approximately 5,000 customers, only 11 customers have been Nevada residents since REE's formation in May 2009. REE never reached out to these customers in Nevada; these customers became REE members while they were visiting vacation resorts located outside the State of Nevada. See Kosco Affidavit, at ¶ 35.

• RSI, REV and REE have not maintained any records or offices in the State of Nevada and have no employees in the State of Nevada. See Kosco Affidavit, at ¶ 36.

• Plaintiff has alleged that this Court has jurisdiction over RSI, REV and REE because they have "purposefully directed activities to residents of the state of Nevada" and because they "specifically targeted consumers in Nevada . . . through at least the operation of interactive webpages." See Complaint, at ¶¶ 16-17 (on file). This is not true. See Kosco Affidavit, at ¶¶ 37-39.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103489-001/1530323.doc

8 of 19

## IV.    LEGAL DISCUSSION

### A.  *Dismissal for Want of Prosecution and Insufficient Service and Process*

*Legal Standard:  FRCP 4(m), 12(b)(4) and 12(b)(5)*

A plaintiff must serve summons and complaint upon a defendant within 120 days of filing the complaint or otherwise face dismissal.  FRCP 4(m).  A court will extend the time for service only upon the plaintiff's showing of good cause.  Id.  Good cause requires a showing of good faith and a reasonable basis, beyond the plaintiff's control, for failing to comply with the Rules.  See In re Sheehan, 253 F.3d 507, 512 (9th Cir. 2001) (to qualify for "good cause," plaintiff is required to show that (a) defendant received actual notice of the lawsuit; (b) defendant would not suffer prejudice; and (c) plaintiff would be severely prejudiced if lawsuit were dismissed).  This standard is ordinarily applied narrowly to protect only those litigants who have exercised meticulous care in attempting to complete service.  See Hamilton v. Endell, 981 F.2d 1062, 1065 (9th Cir. 1992) (inadvertent error or ignorance of governing rules will not excuse failure to timely serve process).  As one court has aptly warned:  "The lesson to the federal plaintiff's lawyer is not to take chances.  Treat the 120 days with respect reserved for a time bomb." Braxton v. United States, 817 F.2d 238, 241 (3d Cir. 1987) (citations omitted).  Should a plaintiff not serve process within the requisite 120 days, or any Court extension thereof, FRCP 12(b)(4) and 12(b)(5) allows for the dismissal of the plaintiff's action.[6]

*Dismissal is Necessary:  Plaintiff's Failure to Timely Serve Has Caused Undue Prejudice*

Nearly 700 days passed.  Plaintiff finally "served" process upon RSI, REV and REE.  Why the long wait?  Previously, Plaintiff unsubstantially and unjustifiably claimed that serving RSI, REV and REE on time, prior to serving VSA and Mr. Schwarz, would cause VSA and Mr.

---

[6]Dismissal under FRCP 12(b)(4) is for insufficient process, whereas dismissal under FRCP 12(b)(5) is for insufficient service of process.  Although academically distinct, at least one court has noted that differences between motions under FRCP 12(b)(4) and 12(b)(5) are not clear.  See, e.g., Wasson v. Riverside County, 237 F.R.D. 423, 424 (C.D. Cal. 2006).  In an abundance of caution and in seeking to prevent any waiver of Moving Defendants' challenge to service and process herein, Moving Defendants move the Court for dismissal under both FRCP 12(b)(4) and 12(b)(5).

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103489-001/1530323.doc

1  Schwarz to further evade service.[7]  Then why did Plaintiff end up serving RSI, REV and REE

2  prior to accomplishing personal "service" upon VSA and Mr. Schwarz?  These questions reveal

3  Plaintiff's ignorance and disregard for the Rules—and the lack of any good faith.  Plaintiff's

4  failure to "[t]reat the 120 days with respect" should indeed be treated like a "time bomb."  <u>See</u>

5  <u>Braxton</u>, 817 F.2d at 241.  Pertinent to the Ninth Circuit's holding in <u>Sheehan</u>, 253 F.3d at 512,

6  RSI, REV and REE never had notice of the underlying action until Plaintiff "served" process

7  upon them on March 2, 2012—**697 days** after Plaintiff filed its Complaint and **574 days** after the

8  Court granted Plaintiff an additional **90 days** for service of process (on August 6, 2010).  <u>See</u>

9  Kosco Affidavit, at ¶¶ 4.  In any event, the prejudice suffered by RSI, REV and REE as a result

10  of being "served" process 697 days after commencement of the underlying action far outweighs

11  any claimed prejudice faced by Plaintiff—especially because Plaintiff failed to serve process

12  after obtaining a 90-day extension in August 2010 and because Plaintiff failed to obtain any

13  additional leave from this Court to "serve" all defendants in the underlying action in March

14  2012.

15       "[T]he core function of service is to supply notice of the pendency of a legal action, in a

16  manner and at a time that affords the defendant a fair opportunity to answer the complaint and

17  present defenses and objections."  <u>Henderson v. United States</u>, 517 U.S. 654, 672 (1996).

18  Similarly, "[l]imitations periods are intended to put defendants on notice of adverse claims and

19  to prevent plaintiffs from sleeping on their rights."  <u>Crown, Cork & Seal Co., Inc. v. Parker</u>, 462

20  U.S. 345, 352 (1983).  Given that Plaintiff's underlying action stems from allegations occurring

21  in 2008,[8] and given that nearly 700 days elapsed since the commencement of the underlying

22  action in April 2010, Plaintiff's failure to timely serve RSI, REV and REE (as a result of its

23  apparent desire to first serve VSA and Mr. Schwarz—which did not even occur), has severely

24  prejudiced RSI, REV and REE.  Indeed, notwithstanding that Plaintiff's claims against the

25  Moving Defendants have no basis in law or in fact, to the extent any relevant evidence ever

26       [7]Moving Defendants note that Plaintiff never produced any process server affidavits as to
   VSA and Mr. Schwarz evading service from the time Plaintiff filed its Complaint in April 2010
27  to finally accomplishing "service" in March 2012.

28       [8]<u>See</u> Complaint, at ¶¶ 35-37, at Doc. No. 1 (on file).

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103489-001/1530323.doc                                    10 of 19

1   existed, such evidence has been compromised and corrupted due to the prejudicial passage of

2   time.  It goes without saying that during the time that Plaintiff failed to timely serve and/or even

3   notify the Moving Defendants, that certain relevant information may have been disposed of, the

4   result of which could be severely prejudicial to the Moving Defendants, if not all of the

5   defendants in this action.  Not putting RSI, REV and REE on timely notice of Plaintiff's

6   underlying action has not given RSI, REV and REE a fair opportunity to answer Plaintiff's

7   claims and present overall defenses.  Plaintiff has "slept" on its alleged rights and should not be

8   condoned for its failure to serve process—a "core function"—upon RSI, REV and REE on time.

9   Likewise, the Court should quash Plaintiff's "service," as Plaintiff never sought leave for an

10  additional extension to serve all defendants in the underlying action—as Plaintiff was only

11  granted an additional 90 days to serve all defendants on August 6, 2010.

12         Accordingly, for the foregoing reasons, RSI, REV and REE respectfully request the

13  Court dismiss Plaintiff's underlying action for want of prosecution and insufficient service of

14  process under FRCP 4(m), 12(b)(4) and 12(b)(5).

15  **B.  *Dismissal Should be with Prejudice***

16         Plaintiff should be estopped from asserting its alleged rights as a result of laches arising

17  from Plaintiff's failure to prosecute this action.  While dismissal under FRCP 4(m) is generally

18  without prejudice, this is the exemplary type of case where dismissal should be with prejudice.

19  Notwithstanding the utter lack of merit of any of Plaintiff's claims, Plaintiff's failure to

20  prosecute the underlying action warrants a dismissal with prejudice. "The authority of a federal

21  trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot

22  be seriously doubted.  The power to invoke this sanction is necessary in order to prevent undue

23  delays in the disposition of pending cases and to avoid congestion in the calendars of the District

24  Courts."  Link v. Wabash R. Co., 370 U.S. 626, 629-30 (1962) (citations omitted); see also

25  FRCP 41(b).    The Ninth Circuit has held that "the failure to prosecute diligently is sufficient by

26  itself to justify a dismissal."  Anderson v. Air West, Inc., 542 F.2d 522, 524 (9th Cir. 1976).

27  "Unreasonable delay creates a presumption of injury to [a defendant's] defenses."  Alexander v.

28  Pacific Maritime Assoc., 434 F.2d 281, 283 (9th Cir. 1970).

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103489-001/1530323.doc

Although Plaintiff's claim allegedly arose in 2008, Plaintiff waited two (2) years to file its Complaint—on April 5, 2010.  See Complaint, at ¶¶ 35-37, at Doc. No. 1 (on file).  Plaintiff then waited almost two (2) years from the filing of the Complaint to conduct the most basic functions of commencing an action—serving the Complaint.  Plaintiff can complain all it wants, but it has only itself to blame for failing to comply with the simplest of requirements of serving the Moving Defendants, parties that could have been served easily within the initial 120-day service period, as well as the additional 90-day extension granted by the Court, but for whom Plaintiff intentionally and purposefully chose not to serve until this Court issued its Local Rule 41-1 Notice in February 2012.  Indeed, while many if not all of Plaintiff's claims would be barred by the application of the statute of limitations,[9] Plaintiff's own actions (rather inactions) evidence why this is the quintessential case where laches applies, barring Plaintiff from pursuing its claims.

Laches is the equitable defense that applies when a party unreasonably delays pursuing its claims to the prejudice of the opposing party.  See Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 835 (9th Cir. 2002) ("Laches is an equitable time limitation on a party's right to bring suit, resting on the maxim that one who seeks the help of a court of equity must not sleep on his rights.") (internal citations omitted).[10]  Here, the evidence in the record—e.g., waiting nearly 700 days after filing the Complaint to initiate service upon Moving Defendants—clearly and indisputably evidences that Plaintiff has "slept on its rights."  As a result of Plaintiff's unexplainable, intentional delay of simply serving the Complaint on the Moving Defendants in a timely manner, the Moving Defendants have been severely prejudiced such that it is no longer just or equitable to allow Plaintiff to continue to prosecute its claims against the

---

[9]For example, Plaintiff's claims for misappropriation of confidential and proprietary assets and conversion are subject to a three-year statute of limitations.  See NRS 11.190(3)(c).  Similarly, Plaintiff's claims for interference with contractual relationships and inducement to breach contract are subject to a three-year limitations period.  See Stalk v. Mushkin, 125 Nev. 21, 27, 199 P.3d 838, 842 (2009).

[10]The Ninth Circuit has specifically held that laches bars trademark infringement claims where the trademark holder "knowingly allowed the infringing mark to be used without objection for a lengthy period of time."  See Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1061 (9th Cir. 1999).

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103489-001/1530323.doc

1    Moving Defendants (or any of the defendants in this case).  This Honorable Court should throw

2    down the hammer now, dismissing the action with prejudice.  Any other result would only

3    reward Plaintiff for its needless and baseless delay, and unfairly and unjustly prejudice the

4    Moving Defendants.[11]

5        ***C. Dismissal for Lack of Personal Jurisdiction***

6          *Legal Standard:  Personal Jurisdiction*

7        A court may dismiss a complaint for lack of personal jurisdiction over a defendant.  See

8    FRCP 12(b)(2).  The plaintiff bears the burden of establishing that the court has jurisdiction over

9    each defendant.  Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006).  In the

10   absence of an evidentiary hearing, the plaintiff must make a prima facie showing of personal

11   jurisdiction to defeat a 12(b)(2) motion to dismiss.  Ballard v. Savage, 65 F.3d 1495, 1498 (9th

12   Cir. 1995).  To make a prima facie showing of jurisdiction, "the plaintiff need only demonstrate

13   facts that if true would support jurisdiction over the defendant."  Id.  The plaintiff's allegations

14   "may not be merely conclusory, but must assert particular jurisdictional facts which establish the

15   necessary ties between the defendant and the forum state."  Pocahontas First Corp. v. Venture

16   Planning Group, Inc., 572 F.Supp. 503, 506 (D. Nev. 1983).

17       In order to establish personal jurisdiction, the plaintiff must show that the forum's long-

18   arm statute confers personal jurisdiction over the out-of-state defendant and that the exercise of

19   jurisdiction does not violate federal constitutional principles of due process.  Haisten v. Grass

20   Valley Med. Reimbursement Fund, Ltd., 784 F.2d 1392, 1396 (9th Cir. 1986).  "Nevada's long-

21   arm statute . . . reaches the limits of due process set by the United States Constitution."  Baker v.

22   Eighth Judicial Dist. Court, 116 Nev. 527, 999 P.2d 1020, 1023 (2000); NRS 14.065(1).

23   Therefore, the analyses for Nevada's long-arm statute and federal due process are the same.  Due

24

25   ───────────────────
     [11]The power to invoke this sanction is necessary in order to prevent undue delays in the
26   disposition of pending cases and to avoid congestion in the calendars of the District Courts.  Link
     v. Wabash R. Co., 370 U.S. 626, 629-30 (1962) (citations omitted); see also FRCP 41(b).   The
27   Ninth Circuit has held that "the failure to prosecute diligently is sufficient by itself to justify a
     dismissal."  Anderson v. Air West, Inc., 542 F.2d 522, 524 (9th Cir. 1976).  "Unreasonable delay
28   creates a presumption of injury to [a defendant's] defenses."   Alexander v. Pacific Maritime
     Assoc., 434 F.2d 281, 283 (9th Cir. 1970).

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103489-001/1530323.doc

13 of 19

1   process requires that a defendant "have certain minimum contacts with the forum state 'such that

2   the maintenance of the suit does not offend traditional notions of fair play and substantial

3   justice.'"   Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, (1945).   Due process is satisfied if

4   the Court has general or specific jurisdiction over the defendant.   Doe v. Unocal Corp., 248 F.3d

5   915, 923 (9th Cir. 2001).

6         *Dismissal is Necessary:  Lack of General Jurisdiction*

7         The exercise of general jurisdiction is appropriate only where the defendant's activities in

8   the forum state are so "continuous and systematic" that it "approximates physical presence" in

9   that state.   Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir. 2000);

10  see also Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984).   In

11  addition, the exercise of general jurisdiction must be reasonable.   See Amoco Egypt Oil Co. v.

12  Leonis Navigation Co., 1 F.3d 848, 852-853 (9th Cir. 1993). In Helicopteros, the Supreme Court

13  held that the nonresident defendant's contacts with the State of Texas did not "constitute the kind

14  of continuous and systematic general business contacts" necessary to establish general

15  jurisdiction.   466 U.S. at 416. The Helicopteros defendant never registered to do business in

16  Texas, never solicited any business in Texas, and maintained no records or offices in Texas.   Id.

17  However, the Helicopteros defendant purchased products costing more than $4 million from

18  Texas, sent personnel to Texas for training and administration, and received over $5 million in

19  payments drawn from a Texas bank. Id. at 411.

20        Here, the facts mitigate against a finding of general jurisdiction over RSI, REV and REE.

21  As with the Helicopteros defendant, RSI, REV and REE have never registered to do any business

22  in the State of Nevada and have not maintained any records or offices in the State of Nevada.

23  Moreover, the contacts of RSI, REV and REE, if any, are far less continuous and systematic than

24  the Helicopteros defendant as RSI, REV and REE have not made any significant business-related

25  transactions in Nevada. Also, whereas the Helicopteros defendant purchased products costing

26  more than $4 million from Texas and received over $5 million in payments drawn from a Texas

27  bank, RSI, REV and REE have not made any such purchases or received such significant

28  payments in Nevada.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103489-001/1530323.doc

14 of 19

1   RSI currently has approximately 25,000 customers.   Of these approximately 25,000
2   members, only 28 customers have been Nevada residents since RSI's formation in July 2001.
3   RSI never reached out to these customers in Nevada; these customers became RSI customers
4   while they were visiting vacation resorts located outside the State of Nevada. <u>See</u> Kosco
5   Affidavit, at ¶ 34.

6   Similarly, REE currently has approximately 5,000 customers.   Of these approximately
7   5,000 customers, only 11 customers have been Nevada residents since REE's formation in May
8   2009.   REE never reached out to these customers in Nevada; these customers became REE
9   members while they were visiting vacation resorts located outside the State of Nevada.   <u>See</u>
10  Kosco Affidavit, at ¶ 35.

11  REV does not even have any customers in Nevada—as it does not have any current
12  customers whatsoever. <u>See</u> Kosco Affidavit, at ¶ 24.  The relationships of RSI, REV and REE
13  with Nevada residents are de minimis and do not amount to the minimum contacts necessary for
14  general personal jurisdiction.

15  *Moving Defendants' Websites are Insufficient to Confer General Personal Jurisdiction*

16  As explained in <u>CollegeSource, Inc. v. AcademyOne, Inc.</u>, 653 F.3d 1066, 1075-76 (9th
17  Cir. 2011) (citations omitted), "the interactivity of a non-resident defendant's website typically
18  provides limited help in answering the distinct question whether the defendant's forum contacts
19  are sufficiently substantial, continuous, and systematic to justify general jurisdiction.  Interactive
20  websites where a user can exchange information with the host computer are now extremely
21  common.   If the maintenance of an interactive website were sufficient to support general
22  jurisdiction in every forum in which users interacted with the website, the eventual demise of all
23  restrictions on the personal jurisdiction of state courts would be the inevitable result."  Contrary
24  to Plaintiff's baseless allegations, RSI, REV and REE have not "specifically targeted consumers
25  in Nevada" though their websites. <u>See</u> Kosco Affidavit, at ¶ 39.  As such, pursuant to the Ninth
26  Circuit's holding in <u>CollegeSource</u>, "the operation of [Moving Defendants'] interactive
27  webpages" cannot confer the Court personal jurisdiction over Moving Defendants.
28  / / /

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103489-001/1530323.doc                    15 of 19

1    *Dismissal is Necessary:  Lack of Specific Jurisdiction*

2          Specific jurisdiction over a non-resident defendant is appropriate if a defendant's forum

3    contacts create a substantial connection with the forum.  See Burger King Corp. v. Rudzewicz,

4    471 U.S. 462, 476 n.18, (1985).  The Ninth Circuit uses the following three-part test to determine

5    the appropriateness of specific jurisdiction:

6          (1) The nonresident defendant must do some act or consummate some transaction
           with the forum or perform some act by which he purposefully avails himself of
7          the privilege of conducting activities in the forum, thereby invoking the benefits
           and protections of its laws[;] (2) the claim must be one which arises out of or
8          results from the defendant's forum-related activities [; and] (3) exercise of
           jurisdiction must be reasonable.

9

10   Doe v. Am. Nat'l Red Cross, 112 F.3d 1048, 1051 (9th Cir. 1997).  "The plaintiff bears the

11   burden of satisfying the first two prongs of the test."  Schwarzenegger v. Fred Martin Motor Co.,

12   374 F.3d 797, 802 (9th Cir. 2004).  After the plaintiff has established the first two prongs, the

13   burden shifts to the defendant to show that exercising jurisdiction would not be reasonable. Id.

14          **1.      Purposeful Availment**

15          "Purposeful avilment analysis turns upon whether the defendant's contacts are

16   attributable to his own actions or solely to the actions of the plaintiff."  Decker Coal Co. v.

17   Commonwealth Edison Co., 805 F.2d 834, 840 (9th Cir. 1986).  Purposeful availment requires

18   that the defendant exhibit some kind of affirmative conduct allowing or promoting business

19   transactions within the forum state.  Id.  Thus, "the solicitation of business in the forum state that

20   results in business being transacted or contract negotiations will probably be considered

21   purposeful availment."  Sinatra v. Nat'l Enquirer, Inc., 854 F.2d 1191, 1195 (9th Cir. 1988).

22          RSI, REV and REE have not purposefully availed themselves of the privilege of doing

23   business in Nevada.  RSI, REV and REE have never registered to do any business in the State of

24   Nevada and have not maintained any records or offices in the State of Nevada.  They have not

25   solicited business or negotiated contracts in Nevada.  RSI, REV and REE obtained business

26   through customers visiting vacation resorts located outside the State of Nevada.  As discussed

27   above, the fact that RSI and REE have between 11-28 customers in Nevada out of a customer

28   base of 5,000 and 25,000 customers respectively is de minimis for purposes of minimum

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103489-001/1530323.doc

16 of 19

1    contacts.    Thus, as readily apparent, RSI, REV and REE have not purposefully availed

2    themselves of the privilege of conducting activities in the State of Nevada.

3            **2.      Arising Out of Forum-Related Activities**

4            The Ninth Circuit applies a "but for" test to determine whether a particular claim arises

5    out forum-related activities.  Ballard v. Savage, 65 F.3d, 1495, 1500 (9th Cir. 1995).  Plaintiff

6    cannot make a prima facie showing that but for the contacts of RSI, REV and REE in Nevada,

7    the alleged trademark infringement and other claims for which Plaintiff seeks relief would not

8    have arisen.  None of the activities giving rise to Plaintiff's allegations in the Complaint occurred

9    in Nevada.  See generally Complaint.  As such, Plaintiff cannot satisfy the "but for" test for the

10   second essential element for specific jurisdiction.

11           **3.      Reasonableness**

12           The Court's exercise of specific personal jurisdiction over RSI, REV and REE cannot be

13   reasonable in light of the other two prongs not being met.  To be reasonable, "the exercise of

14   jurisdiction must comport with fair play and substantial justice."  Schwarzenegger, 374 F.3d at

15   802.    Exercising specific personal jurisdiction over RSI, REV and REE would offend the

16   traditional notions of fair play and substantial justice.  RSI, REV and REE have never conducted

17   any business in Nevada and never directed any business to the State of Nevada.  All of their

18   business has occurred at vacation resorts located outside of Nevada and in Virginia, where RSI,

19   REV and REE are located and have been formed.  All of RSI, REV and REE's witnesses and

20   documents that may be remotely relevant to Plaintiff's baseless claims are located in Virginia,

21   not Nevada.  See Kosco Affidavit, ¶ at 40.  Because RSI, REV and REE have not purposefully

22   availed themselves of the privilege of conducting business in Nevada, and because none of the

23   activities giving rise to Plaintiff's allegations in the Complaint occurred in Nevada, the Court

24   cannot exercise specific personal jurisdiction over RSI, REV and REE with reasonableness and

25   without offending the traditional notions of fair play and substantial justice.

26           Accordingly, for the foregoing reasons, Moving Defendants respectfully request the

27   Court to dismiss Plaintiff's underlying action for lack of personal jurisdiction under FRCP

28   12(b)(2).

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103489-001/1530323.doc

17 of 19

## V.  CONCLUSION

RSI, REV and REE have been severely prejudiced by Plaintiff's unsubstantiated delay in attempting to prosecute the underlying lawsuit—especially given that Plaintiff unjustifiably admitted to not wanting to serve process upon RSI, REV and REE until after serving VSA and Mr. Schwarz.  Plaintiff's disregard for the 120-day rule under FRCP 4(m) and want of prosecution warrants dismissal under FRCP 12(b)(4) and 12(b)(5).  Similarly, dismissal under FRCP 12(b)(2) is warranted here as result of the Court's lack of personal jurisdiction over Moving Defendants.  Accordingly, Moving Defendants respectfully request this Honorable Court to dismiss the underlying action and that dismissal be with prejudice.

Dated this 7th day of May, 2012.

GORDON SILVER

Michael N. Feder
Nevada Bar No. 7332
Puneet K. Garg
Nevada Bar No. 9811
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
Tel:  (702) 796-5555
*Attorneys for Defendants*
*Resort Solutions, Inc.; Royal Elite Vacations,*
*LLC; and Royal Elite Exchanges, LLC*

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103489-001/1530323.doc

18 of 19

**CERTIFICATE OF SERVICE**

The undersigned, an employee of Gordon Silver, hereby certifies that on the 7th day of May, 2012, she caused a copy of the foregoing RESORT SOLUTIONS, INC., ROYAL ELITE VACATIONS, LLC AND ROYAL ELITE EXCHANGES, LLC'S MOTION TO DISMISS PURSUANT TO FRCP 4(m), 12(b)(4), 12(b)(5), 41(b) and 12(b)(2), to be served electronically to all parties of interest through the Court's CM/ECF system as follows:

James D. Boyle
Email:  jboyle@nevadafirm.com
Kimberly J. Cooper
Email:  kcooper@nevadafirm.com
COTTON, DRIGGS, WALCH, HOLLEY,
  WOLOSON & THOMPSON
400 South Fourth Street, Third Floor
Las Vegas, Nevada  89101
*Attorneys for Plaintiff*

Kathryn A. Koehm, an employee of
GORDON SILVER

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103489-001/1530323.doc